The next matter is Daniel Rial, Pro Se, versus Governor Ned Lamont. Mr. Rial. Thank you, your honors. May it please the court. Dan Rial, Pro Se, I respect and appreciate that COVID-19 is a very concerning situation. However, the underlying case, I'll try to focus on the What of the statute that you complained about, repealed or withdrawn? The statute I had complained about, I didn't catch, your honor. Executive orders that are the basis for your complaint. Since you brought your lawsuit? Yes, in part. And part of what the governor had done is he decided to revert control to the local jurisdictions to decide whether or not they wanted to go ahead and implement that stuff. However, the concern, and I think your honors can appreciate the value of this, a lot of these cases have relied heavily on South Bay Pentecostal versus Newsom. And the distinction there, which makes this particular issue easy to evade, but escape review, is that in South Bay, like so many of these situations, governors repeal things, and then they come back. Like in South Bay, Governor Newsom had repealed things, so the Supreme Court didn't get to make a ruling on it. And so what ended up happening was a lot of governors started to cite South Bay. But the problem I think, as your honors see in my brief, is the Marx rule. In Marx versus United States, the Supreme Court said for something to have presidential value, there has to be a majority and there has to be an opinion. So what happens in the South Bay scenario is these impositions are imposed, and then governors bring them back. So I think, as your honors can appreciate by the record, the procedural and factual landscape keeps changing such that the governors get to decide the facts that they have to deal with. Mr. Real, can we just look for a moment? You've cited, I don't know, 10 different orders, some of which it seems to me have been superseded or are no longer in effect, and maybe one or two are not. I see Executive Order 7, 7D, 7N as having been superseded. Unclear about 7R, 10D, 7G, 7S, and I think 7U is superseded. Do you parse your complaint that way as well? Some are superseded, some are not. And I guess what you're saying is that as to the ones that are superseded, they still might be put in place again by the governor, and so we ought to review them. Oh, absolutely. Absolutely. Is that the list though? Because I want to ask the state also about what is still in effect and what isn't. I was unclear. And that affects our jurisdiction because we typically can't exercise jurisdiction over a moot matter, right? Right, but I would argue again it's not moot because the actual state of emergency under 28-9 is at issue. And the core statute at issue we should be focusing on is 28-9B1, where if the governor did it correctly, he would actually modify existing law. So what the governor did is he usurped the public health functions in 19A, 131A, 131B, 131E, 131G. So he was playing public health commissioner rather than following the actual law as the legislature wrote it and intended it. So you're focusing on the governor's exercise of law or authority rather than the particular orders. Absolutely. And he did it in a manner to obstruct interstate commerce and restrain numerous liberties which are set forth in the complaint. And what about your own standing? You were very conclusory about how you were affected by various of these orders. And typically we require, the court law requires a showing of a personal injury that's specific to you. Well, I mean, there are numerous political activities restrained. My was not able to see them at all in 2020 because of this. And my parents' house, six people live in that house. So they woke up in violation of Executive Order 7N. So I mean, in between that and not wearing a mask, it's kind of, it's profound. I mean, it hit everywhere. Thank you. Thank you. We'll hear from the government. Thank you. Good morning, Your Honors. May it please the court, Assistant Attorney General Philip Miller, and I'm representing the governor of Connecticut, Ned Lamont, in this action. Now I'll just go right to the mootness point. I'm asking the court to affirm the district court's decision denying the request for a preliminary injunction. As you know, the brief has numerous grounds, but I'll just talk about mootness. Your Honor, all the orders that are at issue in this case have been superseded or repealed. So maybe the best thing to turn the court to, and it's a public record, though it's not in the record of this case, is on September 22nd, 2021, the governor sent a letter to the members of the General Assembly in which he asked for a reauthorization in accordance with Special Act 21-5. And in that letter, as an appendix, he outlines all the executive orders that he wants to remain in effect for the legislature to approve, which the legislature did do that when they adopted that resolution. So all the orders that Mr. O'Neill was complaining about have long since expired, Your Honor. Let me just interject for a second. I thought that there were still some orders that stayed in effect related to Medicare providers, for example, and the grace period about termination of insurance. I mean, it's more finely grained, but maybe I'm wrong in looking at it that way. No, Your Honor. Let me clarify. I apologize. Mr. O'Neill, I think, names a number of executive orders in his complaint. But when you look at the allegations in his complaint, and then you look at the declaration that he provides in support for his motion for preliminary injunction, those issues that have actually been teed up, such as no more than six people in his house, the ability to attend mass, the ergodynamic healthscape, I think he talks about going through stores, those have all long gone. There is, for example, the Medicaid provider, but there's no allegations in the complaint that affected him. So I want to be very clear. It's what I'm saying that has been superseded or expires every order that I think there's anything in the complaint and in the preliminary injunction that's discussed at all. That's what's been superseded. You know, there's still a mask mandate requirement for unvaccinated people indoors, for example, but there's no allegations in the complaint that he's, you know, been aggrieved by that, for example. So we have to go through and parse what you some of his allegations. Yes, some know, but you think the ones that's to the ones that have not been superseded and that are still in effect, he hasn't sufficiently alleged personal injury. Yes, Your Honor, there's absolutely no standing for any of those. And like I said, I think I refer to that letter that the governor sent on September 21st, 2021. It's a public record. And that in there lays out, I thought that's September 22nd. That's the best place that lays out every executive order that the governor wants to continue in effect. And then if you look at proceedings in the House and Senate on, I believe it was September 27th or 28th, they ratified basically that letter and kept all those orders in effect. And they're in effect until I of 2022, those specific orders. So it's legislative action that's happened. Yes, Your Honor. If you look at all of special act 21 five, that's now sort of a new landscape that discusses the relationship between the governor and the and the and the legislative branch. I'll talk quickly. He mentioned 28 nine, Your Honor, I would just point out that that law 28 nine has been upheld by the Connecticut Supreme Court. And this court couldn't review that, any violation of state law under Pennhurst. But that law 29 has been upheld by the Connecticut Supreme Court, Your Honor, in a different action. In terms of the mootness exception, I think he does talk about the capable of repetition yet evading review. So I wanted to briefly address that. You know, that only is provided for an exceptional circumstance. That's what the Supreme Court has said. It's the plaintiff's burden to establish that exemption, Your Honor. And what he has to establish, one of the things is that there is a reasonable expectation that the same complaining party will be subject to the same action again. And this course has said that reasonable expectation, it's not just a possibility, this could happen again, but it's probable. That's the words this court use probable. And I would point I think your honors to Connecticut Citizens Defense League versus Lamont a case this court decided back in July of 2021. And it talked to this was a challenge to a governor's executive one of the permitting to it suspended the fingerprinting to be able to get permits for gun permits. And the court talked about mootness in there. And it explained why it was speculative that an executive order like this, which had been expired would come back into effect. And here's where it said, I want to quote, he said, particularly in view of the mitigation measures that have become available to combat the spread of COVID-19. And the providential and frequency of pandemics, a future total suspension of fingerprinting is speculative. And your honor, I would submit that the orders that he's complaining of, which is, you know, five persons or less indoors, limitations on church gatherings, on this ergonomic hellscape that he talks about in stores. It is it is at best speculative, your honor, that any of those orders would come into effect again. I mean, we're in the middle of this Omicron surge right now. And the court can take notice of any statements the governor's made, there's certainly been no discussion whatsoever about reverting to the pandemic guidelines we had back in April and May of 2020. Before vaccines before monoclonal antibodies before all the things we've learned about COVID-19. So I would say it's just very speculative, certainly not probable that there is any intention to re renew these executive orders of which plaintiff complains about in his complaint in his motion for I apologize for that. And if there's any other questions, I'd rest on my brief. Thank you. Thank you both will reserve decision. Oh, Mr. Real, I don't think you requested. Did you request rebuttal? I said, Your Honor, I'll keep it brief. I would agree with my friend on the other side that yes, there are exceptional circumstances that invoke the capable of repetition yet evading review doctrine. And quite frankly, I think the record below demonstrates that exception. I mean, we have Jacobson versus Massachusetts with a novel interpretation of it that's been often quoted by governors. And the key difference here is that in Jacobson, the Commonwealth followed the law. And that was it in Jacobson paid the fine and it was the end of the day. But here what the governor has done, and this case involves an interpretation of 28 dash 9b. One, he is not only restrained numerous activities that go to interstate commerce, but he's also restrained numerous civil liberties of a of a question that, you know, not only will this circuit have to answer, but other circuits will have to, you know, explain and delineate as well. So the importance of this is, quite frankly, for our constitutional framework. I mean, where are the lines? You know, when does Congress have to come in? And honestly, you know, the record below pretty much demonstrates a bunch of things that the governor did that Congress had to give him permission to do. So we're dealing with an interplay of a state statute with, you know, the federal framework of how things operate. And, you know, in closing, I would just say, I mean, this has been going on for almost two years. I mean, it's I don't think it's speculation, you know, that some restrictions will come back. I mean, localities have been reimposing mask mandates. A lot of states have been reimposing restrictions. I mean, I know the Chinese government, for example, is locking down again, and Europe's doing a lot of the same things. So it's not far afield to say this can and very likely will happen again, unless this court, you know, affirms, you know, actually reverses and imposes a prohibitory injunction, which I think not only shouldn't do that, but if governors want to do the sort of things, you know, that I've complained about, they should go to Congress and say, hey, I've got a problem, you know, give me the tools to deal with it. I mean, that's why they go to Congress instead of the state legislature. Well, because Congress regulates interstate commerce, what the governor in my state had done is not only did he impose travel restrictions, I understand the state's argument that that's a right to travel issue. But in my case, with my children, I have to enter interstate commerce to either get them here, or go down there and then come back. And according to the restrictions, I had to get a PCR negative from for them to come up here, and they had to isolate. Now that's something that could very easily be brought back. I mean, especially with the Omicron surge. So that's part of that. Mr. Rayel, are you a lawyer? I'm just curious. Oh, no, I'm not, Your Honor. I'm a paralegal. You're doing a very good job for not being a lawyer. Thank you, Your Honor. Your time has concluded. Thank you both for reserved decision on this matter.